BARBOUR
*vs*
MORRIS' ADM. &c

*Harlan & Craddock* for plaintiff: *B. & A. Monroe* for defendants.

---

CHANCERY.

## Barbour *vs* Morris' Adm'r. and others; Morris' Widow and Heir *vs* Spotts' Heirs and others ; and same *vs* Barbour.

*Case* 28.

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Frauds. Rescision. Practice.*

*Oct.* 9.

CHIEF JUSTICE EWING delivered the opinion of the Court.

The case stated.

THREE executions issued on judgments recovered against the heirs, and Starling the administrator of Samuel Spotts, deceased ; one in favor of Scott, one in favor of Clark, and another in favor of Lambert, administrator of Fuqua, which were levied on a large and valuable tract of land near the mouth of Green river, containing upwards of 1,540 acres. The whole tract was sold on the 27th of July, 1835, and George Morris became the purchaser, for the amount of the three executions, at a single bid, amounting to about $1,100, and having died, the deed was afterwards made by the Sheriff to his infant heir. In 1838, Spotts' heirs, by their next friend, filed their bill against the heir, widow and administrators of Morris, Starling the administrator of their father's estate, and Barbour and Clark, as purchasers from Morris, charg-

ing Starling and Morris with a fraudulent combination and arrangement, by which competition in bidding was prevented, and Morris was enabled to acquire the whole tract for the joint benefit of themselves, at an enormous sacrifice, and that before the sale they had bargained to sell the tract to Barbour and Clark, who were privy to the whole fraudulent arrangement, at $6,000, payable in instalments of $1,500 each, the first to be paid at the end of three months, and the rest at other stated periods. They also alledge, that personal assets had come, or might have come to the hands of Starling, the administrator, and call him to an account. The administrator and widow of Morris demur to the bill, and the infant answers, denying the fraud, and setting up a decree in favor of Buck against one Smith *et al.* from whom Spotts obtained his conveyance to the greater part of the land sold fraudulently, and that execution issued on the same, which was levied on the land, and the same was sold on the same day, and his father became the purchaser at $500.

Barbour answered, denying the fraud, but admitting his contract with Morris, in whose name the land was to be purchased at the sale, as charged, and his knowledge of the arrangement between Morris and Starling to buy, and admitting his intention to bid, but that he was restrained from doing so by the suggestions of Starling and Morris, and his contract of purchase from the latter. That he and Clark, whose interest he had since purchased out, had paid the first instalment to Morris, and judgments had been recovered for the three last. He makes his answer a cross bill against Morris' representatives and Starling administrator of Spotts, and Clark, and makes Wm. Griffith also a party, to whom he had sold by executory contract, the one fourth of the land, with the one fourth of an adjoining tract that he had purchased from Mary B. Hopkins, and prays a decree over, if the contract be rescinded.

Wm. Griffith answered the cross bill of Barbour, admitting his purchase of the one fourth, as charged, and that he had paid Barbour $525 in hand on the 1st of May, 1837. He makes his answer a cross bill against Barbour,

BARBOUR
*vs*
MORRIS' ADM. &c

and prays, that in case the Sheriff's sale to Morris be set aside, that his contract with Barbour be annulled, and that he have a decree over against him for the amount paid, and have a lien on the land purchased by him from M. B. Hopkins for the same, and for general equitable relief.

Demurrer of Morris' widow and adm'r. overruled.

The Chancellor overruled the demurrers of the widow and administrator of Morris, both of whom afterwards answered, denying the fraud and combination charged.

Scott and Lambert, who by amended bill of Spotts' heirs had been made parties, answered, admitting that they had been satisfied the full amount of their executions. And an amended bill was filed by Spotts' heirs,' admitting that they had been let into the possession of the land sold, in December, 1840, by Barbour, upon agreed terms as to the rents, in case the sale was not set aside, and that the rents received by Barbour for 1837–8–9 and 1840, had been settled at $450, which was to be paid by Barbour in case the sale was annulled, which by the answer of Barbour was conceded.

Decree of the Chancellor.

The Chancellor annulled the sale under the executions, and ordered the infant heir of Morris to re-convey without requiring Spotts' heirs to refund the amounts paid by his ancestor on the executions; dismissed Barbour's cross bill without prejudice, and dissolved the contract between him and Griffith, and decreed Barbour to refund the $525 paid him, with interest, but gave no lien in his favor upon the tract purchased from M. B. Hopkins.

Barbour and Morris' representatives have brought the case to this Court, on separate writs of error, and Griffith has assigned cross errors, and the causes were all heard together on the same record.

After demurrer overruled to a bill in chancery, by heirs, charging fraud in a sale of a tract of land, in which the administrator is charged with participating, and with having assets & failing to pay off

The ground upon which the demurrers are sought to be sustained, is that the claim for a settlement, set up against the administrator, Starling, and the charge of fraud, by which he and Morris effected the acquisition of the land, are matters multifareous, diverse and distinct, and ought not to be joined together in the same bill. All the demurrants, some before, and others after the opinion of the Court overruling the demurrers, put in answers to the merits, which might perhaps be regarded as a waiver of

the demurrers; but if not, Starling was a necessary and principal party in the fraud charged, in relation to the sale of the land. The fact of his having personal assets in his hands, if such were the case, which should have been applied to the payment of the execution, is a fact which might be charged and brought into investigation, as bearing incidentally upon the charge of fraud in the sale and purchase of the land. Moreover, as the matter of Starling's accounts was disposed of by his answer, and exhibition of his settlement with the County Court, and no further pursued nor any decree rendered upon it, in favor of the complainants, it would seem to be very strict, and tending to useless and unnecessary costs and delay, to send the cause back, that the demurrers might be sustained, when, as we think, in analogy to that liberal course of practice at law which is inculcated by our statutes, the complainants should be allowed to amend their bill by striking out the matter of account, which they certainly would do, and then upon the other matter upon the merits, the same decree would have to be rendered as should have been rendered as the case now stands. For we are not prepared to concede, as relied on by the counsel, that upon sustaining the demurrer for multifarious and distinct matters charged, that the bill should be dismissed, without allowing time to amend, and especially after the answers have been put in, and the case prepared for a trial upon the merits; if even such answer and preparation should not be regarded as superceding a decision of the question raised upon the demurrer.

Nor is there any foundation for the objection raised against the competency of the evidence of Scott or Clark. The latter swears against his interest, and the former, as creditor, whose debt has been paid, can in no event, be affected by the result.

Upon the merits, we entirely concur with the Chancellor, in the cancelment of the sale and conveyance to the heir of Morris. It is satisfactorily shown, that by express agreement between Starling, the administrator, (whose duty it was to protect the estate by reason of his connection with it,) and Morris, an attorney who had attended at least to obtaining judgment in one of the cases,

BARBOUR *vs* MORRIS' ADM. &c

the execution, and in which the adm'r. is called on for a settlement of his administration account, and the parties have proceeded to prepare the case on the charge of fraud, &c. and the case is heard and decided, and brought to this Court for revision—Held that it would be too rigid an adherance to rule to reverse the case for the error of the Court (if any was made,) in overruling the demurrer, and remanding the case for further preparation.

and perhaps to its collection, Morris was to bid for and purchase, for the joint benefit of both, the entire tract; that before the sale they had contracted with Barbour and Clark to sell the land to them for $6,000, payable in instalments, the first of which, for $1,500, was made to fall due at the end of three months, the precise time when the sale bonds of Morris would fall due; and that both Barbour and Clark wanted the land, and would have bid for it, but for the contract of sale to them, and the latter had offered Starling $3,000 for three hundred acres. That they and others, some of whom were relations of Spotts, were restrained from bidding by the protest held out by Starling and Morris, that the purchase was to be made for the benefit of the infant heirs, and as the means of saving something from the wreck of their father's estate, for their education and support, and if any other purchased at a sacrifice, that Hanna, their relation, would redeem, and the whole estate would be sacrificed to the demands of N. Orleans creditors. McAllister, a relation, would have paid the executions, though they amounted to $1,500, for two hundred acres of the land, and asked Starling before the sale, that if he were to offer $2,000 more than Barbour and Clark was to give, whether he would take it, and he answered no, as it would break up their whole plans and arrangements. And to insure the purchase by Morris, and complete the sacrifice, it was contrived that another execution should issue on an old decree in favor of Buck's administrator, obtained against the unknown heirs of one Smith and others, who had conveyed the land to Spotts, who, or whose heirs were no parties to the suit, and who, it was pretended. had executed his bond to Smith to re-convey to him a large portion of the land; and the said execution was levied on Smith's interest in the land, and the same was sold on the same day, and just prior to to the sale under the executions against Spotts' heirs, and Morris became the purchaser, though the same pretended interest had been before sold under the same irregular decree, and Towls had become the purchaser at a nominal amount. Independent of the irregularity of the proceedings and decree against the un-known heirs of Smith, if any such interest existed in

Smith, it was a mere equity which could only have been reached by a proceeding in Chancery, to which Spotts or his heirs should have been made parties. And if the conveyance by Smith to Spotts was fraudulent in part, and made to hinder and delay creditors, of which there is no satisfactry evidence, it would still not be conceded, under the circumstances of the case, that an undefined interest in the heirs of Smith, in land of which the heirs of Spotts were seized, and their ancestor died seized, could be sold by general execution, issuing on a decree obtained on irregular proceedings against unknown heirs, which did not seek to subject to sale the land in question, and to which Spotts' heirs were not made parties. Morris was an attorney, and must have been apprized of the irregularity of the whole proceedings, and we can scarcely conceive of any motive for the levy and sale on the precise same day, and just before the sale under the executions against Spotts's heirs, other than the motive to embarrass the latter sale, deter competitors from bidding, and effect the concocted purpose of Starling and Morris, in purchasing the entire tract at a sacrifice. Nor does it matter that the motive of Starling in the suggestion of the arrangement may have been good, and intended to benefit the heirs. The whole scheme was a fraud upon the creditors of Spotts, if there were any such, and if it was not, the administrator or others, had no right under the pretext, real or pretended, of benefiting the heirs by color of law, to divest them of their real estate without their consent. But the benefit pretended for the heirs, seems by the result to have fallen mainly into the hands of Morris, or Morris and Starling. Deducting from the $6,000 for which they sold the land, the amount paid in discharge of the executions, and the amount of $1,250, set apart to the heirs in the note of Morris to Starling for their benefit, leaves a balance of upwards of $3,000, which their ostensible friends applied to their own use. Upon the whole, without going further into detail, in the enumeration of facts indicating the effect of the arrangement upon the sale, we are perfectly satisfied that it ought not to stand.

BARBOUR
vs
MORRIS' ADM. &c

Where land was irregularly or fraudulently sold to satisfy judgments against a complainant, he should be required, upon setting aside such sale, to do equity by reimbursing the purchaser the amount of the judgments extinguished by the sale.

But we are equally clear that it should not have been set aside by the Chancellor upon other terms than that the heirs should refund to the heir of Morris the amount of the three executions of Scott, Lambert, and Clark, including Sheriff's commissions, under which the land was sold. These executions were properly levied on the land, and created in favor of the creditors, a lien on the same for their satisfaction. Morris paid those debts and discharged the lien, and has an equitable claim to be substituted to their rights and placed in their stead against the heirs of Spotts, who as complainants are seeking the aid of the Chancellor to be restored to their land. They will be restored only upon the terms of doing equity. And indeed in their bill they ask it only upon those terms. Morris' heir also, has a lien upon the land to secure the payment, and upon their failure to pay, so much of the land should be sold as may be sufficient to pay the same with interest. It matters not that the heir of Morris has not prayed for the amount to be refunded. He resists the cancelment of the sale, and Spotts' heirs ask the cancelment upon those terms; and if they did not, their prayer could not be granted upon other than equitable terms, which require that the amount paid in satisfaction of the incumbrance on the land with interest, should be refunded.

There is error, also, in the decree of the Chancellor in not requiring the costs to be levied of the assets and estate of Morris, descended.

As to the cross bill of Barbour, the infant heir of Morris has answered it professing ignorance of its allegations and requiring proof. We are satisfied that Barbour and Clark had full notice of the fraud in the purchase of the land by Morris, and if they had not, as they have not paid the money on their purchase or obtained a deed, they cannot successfully resist the rescission sought by Spotts' heirs, and as the purchase by Morris must be rescinded, his sale to Barbour and Clark must fall with it. But no proof of the payment of the first instalment charged, is made, that we have been able to find in the record. This defect of proof, it is presumable, was the ground upon which the cross bill was dismissed without prejudice.

Had the proof been made, we would have found no difficulty, by way of avoiding a circuity of execution, in directing Spotts' heirs, after deducting the agreed amount of rents, to pay out of the residue of the amount due from them to Morris' heir, for the amount paid by his father on the three executions before referred to, first to Griffith the amount of his demand against Barbour, with interest, and the residue to Barbour, and that the amonnt so paid, including the rents retained, as properly chargable upon Barbour who received them, should be credited on Barbour's demand against Morris' representatives, of $1,500 and interest; and the residue decreed in favor of Barbour against said representatives, to be levied as the law requires. But no proof against the heir being made, nor the case placed in a condition that will enable the Court to interfere with the amount properly payable by Spotts' heirs to Morris' heir, the holder of the legal title to the land, the decree intimated cannot be rendered. But though no proof has been made so as to justify a decree against the heir, Barbour's cross bill was not answered, by the personal representatives of Morris, who are charged with having assets more than sufficient to satisfy the amount which he alledges he paid Morris. The bill, therefore, should have been taken for confessed against them, and a decree rendered against the assets in their hands for the amount of his demand with interest.

As to Griffith's cross bill, a decree was properly rendered dissolving the entire contract with Barbour and ordering the re-payment of the amount advanced by him on his purchase, with interest. But the Chancellor erred to his prejudice, in not allowing him a lien for its payment, on the one fourth of the tract purchased by Barbour from M. B. Hopkins. And as Barbour is admitted to be in laboring circumstances, and by way of avoiding the sale of the land, Griffith should be allowed to have the benefit of the amount of his demand, in the decree in favor of Barbour against Morris' personal representatives.

As to the amount of rents due Spotts' heirs, as agreed on between them and Barbour, we would remark, as the amount, from the evidence in the record, seems to be reasonable, and the receipt of the same by Barbour was

On decreeing a rescission of a sale of land the Chancellor should place the parties in *statu quo*, by ordering the re-payment of the price paid and giving a lien on the land for its payment.

caused by the illegal sale under the executions and sale by Morris, thee lder, to Barbour and Clark, the amount of the rents so received, with interest on the same from the 25th December, 1840, should be deducted from the amount to be refunded by Spotts's heirs to the heir of Morris, for the amount advanced in payment of the three executions before referred to, and Spotts' heirs required only to refund the residue. But as Barbour in fact received the rents, the amount so deducted should be credited on the amount of his decree against the personal representatives of Morris.

The decree of the Chancellor is, therefore, reversed upon the errors and cross errors, and cause remanded that a decree may be rendered as indicated.

*Guthrie and Duncan* for Barbour: *Morris, Fry and Page* for Morris' administrator: *Browne, and Morehead & Reed* for Spotts' heirs: *Letcher & Tilford* for Griffith.